**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| *In re:* ) | |
| ) | |
| WILD CALLING PET FOODS, LLC.   ) | Chapter 11 |
| EIN:  47-2462719 ) | Case No. 17-19898 TBM |
| ) | |
| *Debtor.* ) | |

**MOTION FOR ORDER AUTHORIZING DEBTOR TO:**

**(1) SELL SUBSTANTIALLY ALL ESTATE ASSETS FREE AND CLEAR OF LIENS OTHER INTERESTS, EXCEPT THE ASSUMED LIABILITIES, PURSUANT TO 11 U.S.C. §§ 363(b) AND (f) TO THE SUCCESSFUL BIDDER AT AUCTION;**

**(2) ASSUME AND ASSIGN ASSIGNED CONTRACTS TO THE SUCCESSFUL BIDDER;**

**(3) PAY, OR RESERVE FOR AT CLOSING, THE CURE COSTS; AND**

**(4) SUSPEND 14-DAY STAY IMPOSED BY OPERATION OF FED.R.BANKR.P. 6004(h) AND 6006(d)**

Wild Calling Pet Foods, LLC, debtor-in-possession ("*Debtor*") hereby files this motion for entry of an order authorizing Debtor to: (1) sell, assign, transfer and convey substantially all of Debtor's assets free and clear of all liens and other interests pursuant to 11 U.S.C. §§ 363(b) and (f), except for certain Assumed Liabilities (as defined below), to the Successful Bidder at an Auction (as defined below); (2) assume the Assigned Contracts and assign such Assigned Contracts to the Successful Bidder pursuant to 11 U.S.C. § 365; (3) pay, or reserve for at Closing, the Cure Costs; and (4) suspend the 14-day stay imposed by operation of Fed.R.Bankr.P. 6004(h) and 6006(d) (the "*Sale Motion*").  In support hereof, Debtor states as follows:

## I. INTRODUCTION

1. Debtor filed for Chapter 7 bankruptcy protection on October 25, 2017 (the "*Petition Date*").  On the Petition Date, Debtor was in the business of marketing and distributing dry kibble dog & cat food and canned dog & cat food.

2. Debtor has entered into a binding Letter of Intent dated December 27, 2017 which will be formalized in an Asset Purchase Agreement, a copy of which will be filed with the Court by January 8, 2018 (the Letter of Intent and Asset Purchase Agreement shall be referred to herein as the "*APA"*), with Great Life PetFood, LLC ("*Stalking Horse Bidder*"), pursuant to which Debtor agreed to sell substantially all of the Debtor's assets (the "*Purchased Assets*" as described in more detail below), to Stalking Horse Bidder subject to overbids at an auction.  The Stalking Horse Bidder has agreed to assume certain liabilities (the "*Assumed Liabilities*") plus pay cash in

the amount of $25,000 for the Purchased Assets (the "*Stalking Horse Bid*"). Stalking Horse Bidder will make an earnest money deposit in the amount of $10,000 to Debtor by January 5, 2018. A copy of the Binding Letter of Intent is attached hereto as **Exhibit A**. After January 8, 2018, any interested party or potential bidder may request a copy of the Asset Purchase Agreement from undersigned counsel. A closing of the transactions contemplated by the APA (the "*Closing*") is expected to occur on or before January 31, 2018 (the "*Closing Date*").

3. The APA and a sale of the Purchased Assets are subject to Bankruptcy Court approval. Accordingly, Debtor is filing this Sale Motion requesting approval of the APA and the transactions contemplated therein.

4. The sale of the Purchased Assets to the Successful Bidder is contingent on Bankruptcy Court approval of the Sale Motion. Debtor will request that the Court set a hearing on the Sale Motion as soon as possible after the Auction (the "*Sale Hearing*") to allow for a closing no later than January 31, 2018.

5. In connection with the APA, Debtor is filing a motion to approve auction and sales procedures for the auction (the "*Bidding Procedures Motion*"). In the Bidding Procedures Motion, Debtor is also seeking approval and terms of a Break-Up Fee and Expense Reimbursement.

## II. DESCRIPTION OF THE SALE TRANSACTION

6. **Sale pursuant to 11 U.S.C. § 363(b).** In the Sale Motion, Debtor is seeking to sell the Purchased Assets to the Stalking Horse Bidder, or if overbids, then to the bidder making the highest and best overbid at the auction, as determined by Debtor in its sole discretion, pursuant to 11 U.S.C. § 363(b) outside the ordinary course of business consistent with the terms of the APA. The party to whom the Purchased Assets are to be sold, whether Stalking Horse Bidder or a third-party bidder, is referred to herein as the "*Successful Bidder*". A summary of the essential terms and conditions of the APA are set forth below. Reference should be made to the entire APA for the complete terms and conditions of the sales transaction. Capitalized terms not defined herein shall have the meanings set forth in the APA. To the extent the terms defined in this Sale Motion conflict with the terms of the APA, the terms of the APA shall control.

7. **Assets to be Sold.** As more fully described in the APA, the Purchased Assets shall include all right, title and interest of Debtor in, to or under the following assets and properties:

    a. Any inventory relating to Debtor's pet food business, including e.g. all dry food, wet food, labels, bags, cans, point of sale materials, trade show booths, and other items of a similar nature;

    b. All intellectual property relating to the Debtor's pet food business including, e.g.: (i) all trademarks, service marks, trade names, brand names, logos, identifying symbols, internet domain names, emblems, signs or insignia, and the goodwill associated with any of the foregoing (collectively, "Marks"); (ii) all discoveries, concepts, ideas,

2

      research and development, know-how, formulae, inventions (patentable or unpatentable), compositions, manufacturing and production processes and techniques, technical data, procedures, designs, and any other proprietary rights and confidential nature relating thereto (collectively, "Trade Secrets"); (iii) all patents and copyrights, and (iv) in the case of each of the foregoing, all copies and tangible embodiments thereof (in whatever form or medium);

    c. All documents relating to the Debtor's intellectual property;

    d. All of Debtor's rights (but not obligations) under any assignment of rights agreements, employee invention agreements, and employee non-disclosure or confidentiality agreements (or similar agreements), and under any non-compete and non-solicitation agreements with employees and agents of Debtor or with Debtor, in each case to the extent relating to any asset to be purchased by Stalking Horse Bidder;

    e. All of Debtor's rights under any warranties or guaranties made by suppliers;

    f. All Assigned Contracts (as defined below); and

    g. All of Debtor's rights, claims or causes of action relating to any Purchased Assets or any Assumed Liabilities.

8. **Excluded Assets.** Excluded assets include all assets of the Debtor that are not included in the definition of "Purchased Assets" which excluded assets shall include but not be limited to the following (collectively, the "*Excluded Assets*"):

    a. All cash;

    b. The minute books, stock ledgers, corporate seals and stock certificates of Debtor;

    c. All rights to any tax refunds owed to Debtor;

    d. All insurance policies and rights to proceeds thereof and refunds of premiums therefor;

    e. All prepayments, good faith and other bid deposits submitted by any third party pursuant to an order approving the Bidding Procedures Motion;

    f. Any Avoidance Actions, including any proceeds thereof; g. Any accounts receivable owed for the purchase and sale of pet food sold under Debtor's label or trademark or proceeds therefrom.

9. **Purchase Price/Stalking Horse Bid.** The Stalking Horse Bid shall be an amount equal to all Assumed Liabilities plus cash in the amount of $25,000. In the Bidding Procedures

Motion, Debtor is requesting that the Stalking Horse Bid be determined to be the initial bid for the Purchased Assets.

10. **Assumed Liabilities.** Except for the following liabilities listed below (the "*Assumed Liabilities*"), all other liabilities shall be "*Excluded Liabilities*," and the Successful Bidder will not be deemed to have assumed or agreed to be responsible for any of the Excluded Liabilities, whether or not arising out of the ownership or operation of the Purchased Assets:

    a. The liabilities owed by Debtor to TCJ I, LLC ("*TCJ*") estimated to be approximately $507,000 as of November 30, 2017, provided however, that Stalking Horse Bidder's assumed liability to TCJ shall be reduced to reflect amounts applied or to be applied to the assumed liability from the sale of any pet food product and other inventory located at the Greeley warehouse previously leased by Debtor ("*Greeley Inventory*") and/or any pet food product produced by Simmons Pet Foods ("*Simmons*") on behalf of Debtor which pet food product has not been purchased from Simmons and which is located at Simmons' facility ("*Simmons Inventory*") through the Closing Date pursuant to the Stipulation between Debtor and Secured Creditor TCJ I, LLC providing Relief from Automatic Stay and Authorizing TCJ a Temporary License to Use Debtor's Trademarks (the "*TCJ Agreement*"). The assumed liability to TCJ shall be further reduced by the proceeds received by TCJ from the sale of the Equipment (as defined in the TCJ Agreement) or if not sold, the value of such Equipment;

    b. The Liabilities owed by Debtor to Super G Funding, LLC ("*Super G*") estimated to be approximately $268,607 as of December 27, 2017; provided however, that Stalking Horse Bidder's assumed liability to Super G shall be reduced by any amounts actually received by Super G from any other source that reduces Debtor's debt to Super G;

    c. Any additional amounts accruing on Debtor's outstanding debts to TCJ and/or Super G through the Closing Date, including reasonable attorneys' fees; and

    d. All Cure Costs related to the Assigned Contracts (as defined and described below).

11. **Novation.** Debtor shall request payoffs from TCJ and Super G through January 25, 2018 with an estimated per diem amount through the Closing Date, which amounts shall be made available to any potential bidder. In this Sale Motion, Debtor is requesting that the Sale Order provide that assumption of the Assumed Liabilities by the Successful Bidder shall be deemed to relieve the bankruptcy estate of any further liability to TCJ or Super G for such debt and any lien held by TCJ and Super G on any Excluded Assets shall be deemed released. Debtor shall provide TCJ and Super G additional notice of the terms of this provision and request their consent. TCJ and/or Super J shall retain their liens on the Purchased Assets being sold to

Stalking Horse Bidder in effect in the same nature, extent and priority as existed on the Petition Date.

12. **Simmons**. After the Closing, Successful Bidder may, but is not obligated to, assume the obligations of Debtor to Simmons Pet Foods and purchase any of the Simmons Inventory, upon the terms as may be agreed to by Successful Bidder and Simmons.

13. **Production of Dry Pet Food**. Pending approval and Closing of the APA, Stalking Horse Bidder may enter into a sublicense with TCJ to distribute and market Debtor's pet food product pursuant to the terms of the TCJ Agreement. Stalking Horse Bidder has the capability and capacity to produce Debtor's dry pet food. In order to fulfill purchase orders for dry pet food products pending approval and closing of the APA, Stalking Horse Bidder may produce Debtor's dry pet food. Stalking Horse Bidder shall maintain title to Debtor's dry pet food product produced by Stalking Horse Bidder and shall be entitled to any proceeds from the sale of Debtor's dry pet food produced by Stalking Horse Bidder. If Stalking Horse Bidder is not the Successful Bidder at the Auction (as defined below), Stalking Horse Bidder's right to produce and sell Debtor's dry pet food product shall terminate after conclusion of the Auction, except that Stalking Horse Bidder may sell any of Debtor's remaining dry dog food produced by Stalking Horse Bidder to the Successful Purchaser upon such terms as may be agreed to by Stalking Horse Bidder and Successful Bidder.

14. **Auction.** In the Bidding Procedures Motion, Debtor is requesting that if at least one Qualified Overbid (as defined in the Bidding Procedures Motion) is made, Debtor will conduct an auction (the "*Auction*") on January 26, 2018 at Connolly & Lofstedt, P.C., 950 Spruce St., Ste. 1C, Louisville, CO 80027 at 10:00 a.m. The time and place of the Auction is subject to change. Debtor will file a notice with the Court of any change to the date and time of the Auction and will provide notice to (a) those bidders that have submitted a Qualified Overbid or (b) if prior to the Bid Deadline, to those bidders who are continuing to express an interest in submitting a Qualified Overbid. The Bid Form requires each bidder to confirm that it has not engaged in any collusion with respect to the bidding or sale. The Auction will be conducted openly and all creditors are permitted to attend. If two or more Qualified Overbids are made, the highest and best Qualified Overbid will be the Opening Bid at the Auction. If no Qualified Overbid is made, the Auction will not be conducted and Stalking Horse Bidder will be deemed the Successful Bidder.

15. **Earnest Money Deposit/Qualified Overbids.** Stalking Horse Bidder will make an earnest money deposit in the amount of $10,000 to be held by Debtor. If the Bidding Procedures Motion is approved, for other bidders to bid at the Auction, they must, by the approved Bid Deadline: (a) meet the requirements set forth in the Bidding Procedures Motion; (b) also make a bid deposit in the amount of $10,000 with Debtor; and (c) submit a bid in an amount at least $100,000 more than the Stalking Horse Bid. The Successful Bidder will be entitled to a credit against the cash portion of its bid in an amount equal to their deposit. If a bidder is deemed not to be the Successful Bidder, Debtor shall promptly return the earnest money deposit to such bidder.

5

16. **Assumption/Rejection of Contracts and Leases.** As provided below, in this Sale Motion, Debtor is requesting that the Bankruptcy Court approve the assumption and assignment of any Assigned Contract.

17. **Closing/Closing Date**. A closing on the sale of the Purchased Assets (the "Closing") shall occur at the date and time no later than January 31, 2018 (the "*Closing Date*").

18. **Deliveries at Closing.** At the Closing, the Successful Bidder shall deliver the following to Debtor:

   a. Cash in certified or good funds in an amount to satisfy the Assumed Liabilities or written consent from TCJ and/or Super G that TCJ and/or Super G consent to the assumption of the debt by Successful Bidder and TCJ and Super G waive any claim against Debtor, the bankruptcy estate or any Excluded Asset and release any release lien against the Excluded Assets.

   b. Cash in certified or good funds in an amount equal to the cash portion of Successful Bidder's Auction Overbid (as defined in the Bidding Procedures Motion) less the deposit previously paid to Debtor;

   c. Cash in certified or good funds in an amount to pay any allowed Cure Costs to assume and assign the Assigned Contracts;

   d. an Assumption and Assignment Agreement for any Assigned Contract, duly executed by Debtor;

   e. an Assignment and Bill of Sale, duly executed by Debtor;

   f. a certified copy of the Sale Order.

19. **Conditions to Closing.** The conditions to Closing are set forth in the APA and include, among other items, Debtor's delivery to Stalking Horse Bidder of the documents noted above.

20. **Failure to Close**. To the extent that the Successful Bidder fails to close by January 31, 2018, or the Bankruptcy Court does not authorize a sale of the Purchased Assets to the Successful Bidder, Debtor may seek authority to sell the Purchased Assets to the Qualified Bidder (as defined in the Bidding Procedures Motion) who made the next highest and best Auction Overbid.

21. **Bidding Procedures/Marketing**. Debtor is continuing to market the Purchased Assets and will conduct the Auction if Debtor receives one or more Qualified Overbids. The auction and bid procedures are set forth in more detail in the Bidding Procedures Motion. If approved by the Bankruptcy Court, any person wishing to submit a bid for the Purchased Assets must do so strictly in accordance with the terms of the auction and bid procedures set forth in the Bidding Procedure Motion as approved by the Bankruptcy Court.

22. **Break-Up Fee.** In the event Debtor receives one or more Qualified Bids and an Auction is held, the Stalking Horse Bidder shall be entitled to a fee in the amount of $28,651 (the "*Break-Up Fee*"). The Break-Up Fee shall be deemed an allowed administrative expense claim under 11 U.S.C. § 503(b)(1)(A). If Stalking Horse Bidder is the Successful Bidder at the Auction, Stalking Horse Bidder shall be entitled to a credit at Closing against the cash portion of its Auction Overbid in an amount equal to the Break-Up Fee. If Stalking Horse Bidder is not the Successful Bidder at the Auction, the Break-Up Fee will be paid to Stalking Horse Bidder in cash only upon closing with the Successful Bidder. Only the Stalking Horse Bidder is entitled to the Break-Up Fee. Stalking Horse Bidder shall not be entitled to the Break-Up Fee if Debtor closes on a sale with the Stalking Horse Bidder for the Stalking Horse Bid amount.

23. **Expense Reimbursement**: Stalking Horse Bidder has the capability and capacity to produce Debtor's dry pet food product. In the event Debtor receives one or more Qualified Bids and an Auction is held, Stalking Horse Bidder shall be entitled to reimbursement in an amount not to exceed $20,000 for costs incurred on or prior to the Auction Date to produce Debtor's dry pet food less amounts received or to be received from the sale of such dry pet food ("*Unpaid Production Costs*") plus an additional $20,000 for all other expenses ("*Other Expenses*") incurred in entering into the APA (collectively, the "*Expense Reimbursement*"). If Stalking Horse Bidder is not the Successful Bidder at the Auction, Stalking Horse Bidder may sell any unsold dry pet food that Stalking Horse Bidder produced, to the Successful Bidder upon such terms as agreed to by the parties, with the sales revenue received from the Successful Bidder to be included in the amounts received in calculating the Unpaid Production Costs. The Other Expenses shall be deemed an allowed administrative expense claim under 11 U.S.C. § 503(b)(1)(A) without further application to the Court. Stalking Horse Bidder may apply to the Bankruptcy Court to determine the amount of any Unpaid Production Costs which if allowed will be an administrative expense claim under 11 U.S.C. § 503(b)(1). If Stalking Horse Bidder is the Successful Bidder at the Auction, then the Stalking Horse Bidder shall be entitled to a credit against the cash portion of is Auction Overbid in an amount equal to the Other Expenses. If Stalking Horse Bidder is not the Successful Bidder at the Auction, the amount of the Other Expenses shall be paid to Stalking Horse Bidder only upon closing with the Successful Bidder. Debtor shall reserve $20,000 from the cash portion of the Successful Bidder's Auction Overbid pending allowance of any Unpaid Production Costs. Debtor shall pay the allowed Unpaid Production Costs within five (5) business days following entry of the Court order approving the Unpaid Production Costs. Only the Stalking Horse Bidder is entitled to the Expense Reimbursement. Stalking Horse Bidder shall not be entitled to any portion of the Expense Reimbursement if Debtor closes a sale with Stalking Horse Bidder for the Stalking Horse Bid Amount.

24. **Management**. In the event Stalking Horse Bidder is the Successful Bidder, Stalking Horse Bidder may hire Timothy Petersen, CEO and Managing Member of Debtor upon such terms as may be agreed to by the parties.

### III. SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

25. Debtor is seeking to sell the Purchased Assets to the Successful Bidder free and clear of all liens and interests in the Purchased Assets, except for the Assumed Liabilities.

26. Pursuant to 11 U.S.C. § 363(f), Debtor may sell property of a bankruptcy estate free and clear of any interest in such property of an entity other than the estate if:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

27. Debtor believes that TCJ and Super G consent to a sale pursuant to the terms of the APA and this Sale Motion.

28. Debtor asserts that all other liens asserted on the Purchased Assets were perfected within the 90 day period immediately prior to the Petition Date or were unperfected and that Debtor may avoid such liens pursuant to 11 U.S.C. §§ 544 or 547 and recover such liens for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 550 or 551. Therefore, Debtor asserts that all other liens on the Purchased Assets are in bona fide dispute.

### IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

29. **Assigned Contracts**. Pursuant to the terms of the APA, the Stalking Horse Bidder shall not be assuming, and the Purchased Assets will be sold to the Stalking Horse Bidder free and clear of, any executory contracts or unexpired leases, except for the Assigned Contracts to be included as an Exhibit to the Asset Purchase Agreement to be filed with the Court by January 8, 2018 (the "*Assigned Contracts*"). Through this Sales Motion, Debtor seeks authorization to assume and assign the Assigned Contracts under 11 U.S.C. §§ 365(b) and (f).

30. **Cure Costs/Adequate Assurance of Future Performance.** Pursuant to 11 U.S.C. § 365(b), in order to assume the Assigned Contracts, Debtor must cure or provide adequate assurance that Debtor will promptly cure all defaults under the Assigned Contracts (other than a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for Debtor to cure such default) and shall pay or cause to be paid (or reserve for at Closing), any and all unpaid cure and reinstatement costs and expenses relating to the assumption and assignment of the Assigned Contracts (the "*Cure Costs*"). Debtor must provide proof of adequate assurance of the Successful Bidder's future performance under the Assigned Contracts. The Cure Costs are Assumed Liabilities which amounts must be paid in cash at Closing or reserved for at Closing. As set forth below, Debtor is requesting that the Bankruptcy Court approve the assumption and assignment of the Assigned Contracts to be listed on the Exhibit to the Asset Purchase Agreement.

31. **Notice to Counterparties to Assigned Contracts.** Debtor will provide notice to any counterparty to an Assigned Contract by January 8, 2018 that Debtor is seeking to assume and assign such contract with the counterparty. The notice will provide that to the extent any counterparty to an Assigned Contract objects to the assumption and assignment of its contract or lease, must file an objection with the Court by January 22, 2018 and in such objection provide the necessary Cure Costs under its Assigned Contract. The notice will provide that failure to object to the assumption and assignment of an Assigned Contract by January 22, 2018 or provide the necessary Cure Costs in the objection will constitute consent and agreement to Debtor's assumption and assignment of the Assigned Contract.

32. **Adequate Assurance.** Debtor seeks a determination that the requisite adequate assurance of future performance as required by 11 U.S.C. § 365(b)(1)(C) and any other matters at issue under 11 U.S.C. §§ 365(b) and (f) have been met. To the extent there are objections to the assumption and assignment of an Assigned Contract, Debtor and the Successful Bidder will provide evidence at the sale hearing to show adequate assurance of future performance by the Successful Bidder.

33. **No Further Liability.** Pursuant to 11 § 365(k), assumption and assignment of an Assigned Contract relieves the Debtor and the bankruptcy estate from any liability for any future breach of the Assigned Contract.

## V.     APPROVAL OF SALES TRANSACTION

34. The standard for approving a sale of assets in a Chapter 7 bankruptcy case is the "business judgment rule." Under the business judgment rule, Debtor has the burden to establish sound business reasons for terms of the proposed sale. *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004).

35. The factors for the Bankruptcy Court to consider in whether to approve the sale include (a) whether there exists any improper or bad motive in undertaking the sale transaction; (b) the fairness of the price and the result of negotiations or bidding at arm's length; and (c) adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest. *Id.* In this case, all three factors of the business judgment rule are met.

36. No improper motive exists. The Stalking Horse Bid was a negotiated term under the APA. The Stalking Horse Bid is subject to overbids at an auction. Debtor will continue to market the Purchased Assets until the auction date. Debtor is requesting approval of the bid procedures in the Bidding Procedure Motion. Debtor believes that the bid procedures are reasonable, will expose the Purchased Assets to the market, and will encourage bidding at the auction.

37. The sale under the APA is in the best interest of creditors and Debtor, and Debtor believes that such sale will maximize the value of the Purchased Assets.

38. As discussed above, the sale free and clear of all liens and interests, other than the Assumed Liabilities, is authorized pursuant to 11 U.S.C. § 363(f).

## VI. MOTION TO LIFT THE STAY PURSUANT TO FED.R.BANKR.P. 6004(h) AND 6006(d)

39. In order to accommodate the terms of the APA to consummate the sale shortly after Bankruptcy Court approval, Debtor is requesting that the Bankruptcy Court suspend 14 day stay imposed by operating of Fed.R.Bankr.P. 6004(h) and 6006(d).

**WHEREFORE**, Debtor requests that this Bankruptcy Court enter an Order:

A. Granting this Sales Motion;

B. Approving the terms of the APA;

C. Authorizing Debtor to:

(1) Convey the Purchased Assets to the Successful Bidder at the auction free and clear of liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. §§ 363(b) and (f), except for the Assumed Liabilities, in accordance with the APA;

(2) Assume and assign the Assigned Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) and determine the Cure Costs under such Assigned Contracts;

D. Waiving the 14-day stay imposed by operation of Fed.R.Bankr.P. 6004(h) and 6006(d); and

E. Providing such other and further relief as the Bankruptcy Court deems appropriate.

Dated: December 28, 2017.    Respectfully submitted,

CONNOLLY & LOFSTEDT, P.C.

*/s/ Joli A. Lofstedt*
Joli A. Lofstedt, Esq. #21946
950 Spruce Street, Suite 1C
Louisville, CO 80027
Phone: (303) 661-9292
Fax: (303) 661-9555
joli@clpc-law.com

## LETTER OF INTENT

| Stalking Horse Purchase Agreement Provision | Summary Description |
|---|---|
| **Stalking Horse Purchase Agreement Parties** | <u>Seller:</u>  Wild Calling Pet Foods, LLC, debtor-in-possession pending in the United States Bankruptcy Court for the District of Colorado as Case No. 17-19898 TBM (hereinafter, "*Seller*" or "*Debtor*")<br><u>Buyer:</u>  Great Life Petfood, LLC (hereinafter "*Buyer*" or "*Stalking Horse Bidder*") |
| **Purchase Price** | <u>Purchase Price</u>: equals the amount of the Assumed Liabilities (defined below) plus $25,000 in cash. |
| **Earnest Money** | Buyer will make an earnest money deposit in the amount of $10,000 (the "*Earnest Money*") to Debtor by January 5, 2018.  The Earnest Money will be nonrefundable if Buyer is the Successful Bidder (defined below) for the Purchased Assets (defined below).  The Earnest Money will be refundable if Buyer is not the Successful Bidder. |
| **Closing / Closing Date** | A closing on the sale of the Purchased Assets (the "*Closing*") shall occur at the date and time no later than January 31, 2018 (the "*Closing Date*"). |
| **Purchased Assets** | Purchased Assets include:<br>(a) All inventory relating to the Debtor's pet food business, including, e.g., all dry food, wet food, labels, bags, cans, point of sale materials, trade show booths, and other items of a similar nature;<br>(b) All intellectual property relating to the Debtor's pet food business including, e.g.: (i) all trademarks, service marks, trade names, brand names, logos, identifying symbols, internet domain names, emblems, signs or insignia, and the goodwill associated with any of the foregoing (collectively, "*Marks*"); (ii) all discoveries, concepts, ideas, research and development, know-how, formulae, inventions (patentable or unpatentable), compositions, manufacturing and production processes and techniques, technical data, procedures, designs, and any other proprietary rights and confidential nature relating thereto (collectively, "*Trade Secrets*"); (iii) all patents and copyrights, and (iv) in the case of each of the foregoing, all copies and tangible embodiments thereof (in whatever form or medium);<br>(c) All documents relating to the Debtor's intellectual property;<br>(d) All of Debtor's rights (but not obligations) under any assignment of rights agreements, employee invention agreements, and employee non-disclosure or confidentiality agreements (or similar agreements), and under any non-compete and non-solicitation agreements with employees and agents of Debtor or with Debtor, in each case to the extent relating to the assets purchased herein;<br>(e) All of Debtor's rights under any warranties or guaranties made by suppliers; and,<br>(f) All of Debtor's rights, claims or causes of action relating to any Purchased Asset or any Assumed Liabilities. |

| **Stalking Horse Purchase Agreement Provision** | **Summary Description** |
|---|---|
| **Excluded Assets** | Excluded assets include all assets of the Debtor that are not included in the definition of "Purchased Assets" which excluded assets shall include but not be limited to the following (collectively, the "*Excluded Assets*"):<br>(a) All cash;<br>(b) The minute books, stock ledgers, corporate seals and stock certificates of Debtor;<br>(c) All rights to any tax refunds owed to Debtor;<br>(d) All rights to any tax refunds owed to Debtor;<br>(e) All insurance policies and rights to proceeds thereof and refunds of premiums therefor;<br>(f) All prepayments, good faith and other bid deposits submitted by any third party;<br>(g) Any Avoidance Actions, including any proceeds thereof; and<br>(h) Any accounts receivable owed for the purchase and sale of pet food sold under Debtor's label or trademark or proceeds therefrom. |
| **Purchase Price/Stalking Horse Bid** | The purchase price for the Purchased Assets shall be an amount equal to all Assumed Liabilities (as defined below) plus cash in the amount of $25,000 (the "*Stalking Horse Bid*"). |
| **Assumed Liabilities** | Except for the following liabilities (the "*Assumed Liabilities*"), all other liabilities shall be "*Excluded Liabilities*" and the Successful Bidder will not be deemed to have assumed or agreed to be responsible for any of the Excluded Liabilities, whether or not arising out of the ownership or operation of the Purchased Assets:<br>(a) The liabilities owed by Debtor to TCJ I, LLC ("*TCJ*") estimated to be approximately $507,000 as of November 30, 2017, provided however, that Stalking Horse Bidder's assumed liability to TCJ shall be reduced to reflect amounts applied or to be applied to the assumed liability from the sale of any pet food product and other inventory located at the Greeley warehouse previously leased by Debtor ("*Greeley Inventory*") and/or any pet food product produced by Simmons Pet Foods ("*Simmons*") on behalf of Debtor which pet food product has not been purchased from Simmons and which is located at Simmons' facility ("*Simmons Inventory*") through the Closing Date pursuant to the Stipulation between Debtor and Secured Creditor TCJ I, LLC providing Relief from Automatic Stay and Authorizing TCJ a Temporary License to Use Debtor's Trademarks (the "*TCJ Agreement*"). The assumed liability to TCJ shall be further reduced by the proceeds received by TCJ from the sale of the Equipment (as defined in the TCJ Agreement) or if not sold, the value of such Equipment;<br>(b) The liabilities owed by Debtor to Super G Funding, LLC ("*Super G*") estimated to be approximately $268,607 as of December 27, 2017; provided however, that Stalking Horse Bidder's assumed liability to Super G shall be reduced by any amounts actually received by Super G from any other source that reduces Debtor's debt to Super G;<br>(c) Any additional amounts accruing on Debtor's outstanding debts to TCJ |

| Stalking Horse Purchase Agreement Provision | Summary Description |
|---|---|
| | and/or Super G through the Closing Date, including reasonable attorneys' fees; and<br>(d) All Cure Costs related to the Assigned Contracts (as defined below). |
| **Excluded Liabilities** | Excluded Liabilities include all liabilities of the Debtor other than the Assumed Liabilities. |
| **Novation** | Assumption of the Assumed Liabilities by Buyer shall be deemed to relieve the bankruptcy estate of any further liability to TCJ or Super G for such debt and any lien held by TCJ and/or Super G on any Excluded Asset shall be deemed released.  TCJ and Super J shall be entitled to retain their liens on the Purchased Assets in effect in the same nature, extent and priority as existed on the Petition Date. |
| **Assigned Contracts / Cure Costs** | Assigned Contracts shall mean those executory contracts or unexpired leases to which Debtor is a party and as to which Stalking Horse Bidder wishes to acquire from Debtor.  Any Assigned Contract shall be designated by an exhibit to the Asset Purchase Agreement to be filed with the Court by January 8, 2018.  Debtor will seek to assume and assign any Assigned Contract pursuant to 11 U.S.C. § 365 upon such notice as may be required to any counterparty to an Assigned Contract.  Cure Costs shall mean any unpaid cure and/or reinstatement costs and expenses relating to the assignment and assumption of an Assigned Contract under 11 U.S.C. § 365.  To the extent a counterparty to an Assigned Contract objects to the assumption and assignment of the Assigned Contract, Debtor and Buyer will provide evidence at the sales hearing to show adequate assurance of future performance by Buyer.  The bankruptcy estate shall be relieved from any further liability to the counterparty to an Assigned Contract pursuant to 11 U.S.C. § 365(K) |
| **Simmons Pet Foods** | After the Closing, the Buyer may, but is not obligated to, assume the obligations of Debtor to Simmons Pet Foods and purchase any Simmons Inventory, upon the terms as may be agreed to by Buyer and Simmons. |
| **Production of Dry Pet Food** | Pending approval and the Closing, Stalking Horse Bidder may enter into a sublicense with TCJ to distribute and market Debtor's pet food product pursuant to the terms of the TCJ Agreement.  Stalking Horse Bidder has the capability and capacity to produce Debtor's dry pet food products.  In order to fulfill purchase orders for dry pet food product pending approval and Closing of the APA, Stalking Horse Bidder may produce Debtor's dry pet food.  Stalking Horse Bidder shall maintain title to Debtor's dry pet food product produced by Stalking Horse Bidder and shall be entitled to any proceeds from the sale of Debtor's dry pet food produced by Stalking Horse Bidder.  If Stalking Horse Bidder is not the Successful Bidder at the Auction (as defined below), Stalking Horse Bidder's right to produce and sell Debtor's dry pet food product shall terminate immediately upon conclusion of the Auction, except that Stalking Horse Bidder may sell any of Debtor's remaining dry dog food produced by Stalking Horse Bidder to the Successful Purchaser upon |

| Stalking Horse Purchase Agreement Provision | Summary Description |
|---|---|
| | such terms as may be agreed to by Stalking Horse Bidder and Successful Bidder. |
| **Qualified Overbids / Auction** | A "*Qualified Overbid*" shall mean an overbid submitted by a potential purchaser seeking to purchase the Purchased Assets that complies with the terms and conditions set forth in the Motion for Order Approving Overbid and Auction Procedures, Break-Up Fee and Expense Reimbursement (the "Bidding Procedures Motion") as filed in Debtor's bankruptcy case and as approved by Order of the Court. If Debtor receives one or more Qualified Overbids, Debtor will conduct an auction (the "*Auction*") pursuant to the terms and conditions set forth in the Bidding Procedures Motion as approved by the Court. If no Qualified Overbids are received, Stalking Horse Bidder shall be deemed the Successful Bidder for the Purchased Assets. If an Auction is conducted, the Successful Bidder shall be determined pursuant to the terms and conditions set forth in the Bidding Procedures Motion as approved by the Court. |
| **Stalking Horse Bid Protections** | Breakup Fee: In the event Debtor receives one or more Qualified Bids and an Auction is held, the Stalking Horse Bidder shall be entitled to a fee in the amount of $28,651 (the "*Break-Up Fee*"). The Break-Up Fee shall be deemed an allowed administrative expense claim under 11 U.S.C. § 503(b)(1)(A). If Stalking Horse Bidder is the Successful Bidder at the Auction, Stalking Horse Bidder shall be entitled to a credit at Closing against the cash portion of its Auction Overbid (as defined in the Bidding Procedures Motion) in an amount equal to the Break-Up Fee. If Stalking Horse Bidder is not the Successful Bidder at the Auction, the Break-Up Fee will be paid to Stalking Horse Bidder in cash only upon closing with the Successful Bidder. Only the Stalking Horse Bidder is entitled to the Break-Up Fee. Stalking Horse Bidder shall not be entitled to the Break-Up Fee if Debtor closes on a sale with Stalking Horse Bidder for the Stalking Horse Bid amount.<br><br>Expense Reimbursement: Stalking Horse Bidder has the capability and capacity to produce Debtor's dry pet food. In the event Debtor receives one or more Qualified Bids and an Auction is held, Stalking Horse Bidder shall be entitled to reimbursement in an amount not to exceed $20,000 for costs incurred on or prior to the Auction Date to produce Debtor's dry pet food less amounts received or to be received from the sale of such dry pet food ("*Unpaid Production Costs*") plus an additional $20,000 for all other expenses ("*Other Expenses*") incurred in entering into the APA (collectively, the "*Expense Reimbursement*"). If Stalking Horse Bidder is not the Successful Bidder at the Auction, Stalking Horse Bidder may sell any of Debtor's unsold dry pet food that Stalking Horse Bidder produced, to the Successful Bidder upon such terms as may be agreed to by the parties, with the sales revenue received from the Successful Bidder to be included in the amounts received in calculating the Unpaid Production Costs. The Other Expenses shall be deemed an allowed administrative expense claim under 11 U.S.C. § 503(b)(1)(A) without further application to the Court. Stalking Horse Bidder may apply to the Bankruptcy Court to determine the amount of any Unpaid |

| **Stalking Horse Purchase Agreement Provision** | **Summary Description** |
|---|---|
|  | Production Costs which if allowed will be an administrative expense claim under 11 U.S.C. § 503(b)(1). If Stalking Horse Bidder is the Successful Bidder at the Auction, then the Stalking Horse Bidder shall be entitled to a credit against the cash portion of is Auction Overbid in an amount equal to the Other Expenses. If Stalking Horse Bidder is not the Successful Bidder at the Auction, the amount of the Other Expenses shall be paid to Stalking Horse Bidder only upon closing with the Successful Bidder. Debtor shall reserve $20,000 from the cash portion of the Successful Bidder's Auction Overbid pending allowance of any Unpaid Production Costs. Debtor shall pay the allowed Unpaid Production Costs within five (5) business days following entry of the Court order approving the Unpaid Production Costs. Only the Stalking Horse Bidder is entitled to the Expense Reimbursement. Stalking Horse Bidder shall not be entitled to any portion of the Expense Reimbursement if Debtor closes a sale with Stalking Horse Bidder for the Stalking Horse Bid amount. |
| **Representations and Warranties** | Buyer and Seller will provide limited representations and warranties as is standard in an asset purchase agreement, including due authorization, no financing contingency, *etc*. |
| **Section 363 Sale/ Competitive Bidding** | Debtor will promptly file the Bidding Procedures Motion with a proposed order in form and substance acceptable to Buyer. Debtor shall file with the Court the appropriate pleadings seeking approval of the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests, other than the Assumed Liabilities, pursuant to section 363 of title 11 of the Bankruptcy Code ("*Bankruptcy Code*") with a proposed order in form and substance acceptable to Buyer. |
| **Closing and Other Deadlines** | Effective Time: 5:00 p.m. (Mountain Time) on December 27, 2017<br>Filing of Bidding Procedures Motion: December 28, 2017<br>Bidding Procedures Objection Deadline: January 11, 2018<br>Designation of Assumed Contracts Deadline: January 8, 2018<br>Bid Deadline: on or before January 25, 2018, at noon 12:00 p.m. (Mountain Time)<br>Auction: on or before January 26, 2018<br>Sale Hearing: Any time after the Auction or such other date mutually agreeable by the parties<br>Closing: on or before January 31, 2018 (or three business days following satisfaction or waiver of all conditions to the Stalking Horse Purchase Agreement) or such other date mutually agreeable by the parties |
| **Deliveries at Closing** | At the Closing, the Successful Bidder shall deliver the following to Debtor:<br>(a) Cash in certified or good funds in an amount to satisfy the Assumed Liabilities or written consent from TCJ and/or Super G that TCJ and/or Super G consent to the assumption of the debt by Successful Bidder and TCJ and Super G waiver any claim or lien against Debtor, the bankruptcy estate or any Excluded Asset;<br>(b) Cash in certified or good funds in an amount equal to the cash portion |

| Stalking Horse Purchase Agreement Provision | Summary Description |
|---|---|
| | of Successful Bidder's Auction Overbid less the deposit previously paid to Debtor;<br>(c) Cash in certified or good funds in an amount to pay any allowed Cure Costs to assume and assign the Assigned Contracts;<br>(d) an Assumption and Assignment Agreement for any Assigned Contract, duly executed by Debtor;<br>(e) an Assignment and Bill of Sale, duly executed by Debtor;<br>(f) a certified copy of the Sale Order. |
| **Remaining Due Diligence** | Debtor shall use good faith efforts to provide Buyer with reasonable access to all financial, legal and operational documents and information pertaining to the Purchased Assets.<br>Buyer shall complete its due diligence by January 8, 2018.<br>Buyer's legal counsel will prepare the initial draft of the Asset Purchase Agreement. |
| **Management** | In the event Stalking Horse Bidder is the Successful Bidder, Stalking Horse Bidder may hire Timothy Petersen, CEO and Managing Member of Debtor upon such terms as may be agreed to by the parties. |
| **Marketing** | Debtor is continuing to market the Purchased Assets and will conduct the Auction if Debtor receives one or more Qualified Overbids. If approved by the Bankruptcy Court, any person wishing to submit a bid for the Purchased Assets must do so strictly in accordance with the terms of the auction and bid procedures set forth in the Bidding Procedure Motion as approved by the Bankruptcy Court. |
| **Conditions to Closing** | Subject to Bankruptcy Court approval, this Letter of Intent is a binding agreement upon Debtor and Seller as to the terms set forth herein. The parties intend to enter into a formal Asset Purchase Agreement which will incorporate the terms set forth in this Letter of Intent and which will be filed with the Bankruptcy Court by January 8, 2018. |
| **Failure to Close.** | If Buyer fails to close as provided in this Letter of Intent, Buyer will be in default and shall Buyer shall forfeit its Earnest Money. |

**IN WITNESS WHEREOF**, Debtor and Buyer have executed this Letter of Intent as of the date set forth below.

Date: December 28, 2017.

WILD CALLING PET FOODS, LLC, Debtor-in-Possession

By: _____
Timothy Petersen, CEO and Managing Member

and

GREAT LIFE PETFOOD, LLC

By: _____
Name: Milli Ta, Principal